IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DUSTIN ADAMSON and DAVID WHITE, individually, and on behalf of others similarly situated, | : : : | CIVIL ACTION   2:20-cv-778 |
| | : | FILED ELECTRONICALLY ON MAY |
| Plaintiffs, | : | 27, 2020 |
| v. | : | |
| | : | |
| KIRKHAM SOLUTIONS, INC. and | : | CLASS/COLLECTIVE ACTION |
| COMCAST CABLE COMMUNICATIONS | : | |
| MANAGEMENT, LLC, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT – CLASS/COLLECTIVE ACTION

Plaintiffs Dustin Adamson ("Mr. Adamson") and David White ("Mr. White") (collectively "Plaintiffs") bring this lawsuit against Defendants Kirkham Solutions, Inc. ("Kirkham") and Comcast Cable Communications Management, LLC ("Comcast") (collectively "Defendants"), seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, et seq. Plaintiffs' FLSA claim is asserted as a collective action under 29 U.S.C. § 216(b) while the PMWA claim is asserted as a class action under Federal Rule of Civil Procedure 23. See Knepper v. Rite Aid Corp., 675 F.3d 249 (3d Cir. 2012) (collective and class claims may proceed together in the same lawsuit).

## JURISDICTION AND VENUE

1.      Jurisdiction over the FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.      Jurisdiction over the PMWA claim is proper under 28 U.S.C. § 1367.

3.      Venue in this Court is proper under 28 U.S.C. § 1391.

## PARTIES

4.      Mr. Adamson resides in Coraopolis, Pennsylvania (Allegheny County).   Mr. Adamson has filed a consent to join form which is attached as ***Exhibit A***.

5.      Mr. White resides in Orange Springs, Florida.  Mr. White has filed a consent to join form which is attached as ***Exhibit B***.

6.      Defendant Kirkham Solutions is a corporate entity headquartered in Indiana.

7.      Defendant Comcast is a corporate entity headquartered in Pennsylvania.

## FACTS

8.      Kirkham Solutions is a company that provides technical support and internet installation services for customers across the country.

9.      Comcast is a global media and technology company with two primary businesses, Comcast Cable and NBC Universal.  Comcast is one of the nation's largest video, high-speed internet and phone providers to residential and commercial consumers.

10.      Comcast contracts with "vendors" such as Kirkham Solutions to perform internet installation and repair services to its customers.  Comcast manages vendors such as Kirkham Solutions from a common "Vendor Management Center."  *See* https://pcc-contingent.comcast.com/index.php?cmp=partner_login (last visited on May 26, 2020).

11.      All of the services provided by Defendant Comcast's vendors are governed by a uniform "Vendor Services Agreement with Comcast."  *Id*.

12.      Comcast and Kirkham Solutions jointly employ field technicians, such as Plaintiffs, to perform internet installation and repair services for Comcast's commercial clients.

13.      Although Kirkham Solutions is listed as the employer that issues the either IRS 1099 form or W-2 form to Plaintiffs and other field technicians, as briefly summarized in

subparagraphs (a) – (k) below, Comcast also jointly employed Plaintiffs and other field technicians:

(a)   At the onset of their employment, Plaintiffs and other field technicians are required to undergo a Comcast background check.  If the field technician clears the background check and meets Comcast's other requirements, then they are provided with a Comcast email address, security badge, and access to certain secured computer networks.

(b)   Plaintiffs and other field technicians are required to: wear a uniform bearing Comcast's "Xfinity" product name and logo; perform their work according to Comcast's policies and procedures; and perform the work when and where Comcast specifies.

(c)   Comcast maintains a great deal of control over the work performed by Plaintiffs and other field technicians.  For example, the "Digital Network – Field Installation Guide" provided by Comcast states "[a]ll activities must be done in sequence."  The document goes on to provide detailed instructions to the field technicians as to the scope of work to be provided, what to do upon arrival, the pre-installation activities, the installation activities, and the close out activities to be completed.

(d)   Comcast maintains strict protocols and procedures that govern their vendors and the field technicians.  Examples of these protocols and procedures include: the Comcast "Expectations for Conducting Business" and the "Appointment Punctuality" policy, which requires field technicians to "[c]omit to being 15 minutes early" to each appointment.

(e)   Comcast provides Plaintiffs and other field technicians with the training necessary to carry out their job duties.  For example, on September 25, 2019 Ronal Goins, Project Coordinator for Comcast, sent Mr. Adamson an email stating: "[w]e have developed a tech webinar and knowledge check in order for us to be able to confirm that the techs who are going to the field are prepare for a Pizza Hut install."  *See Exhibit C.*  The email then goes on to notify the technicians that they will be tested by Comcast on the content of the webinar and the minimum passing score on the test is 85%.

(f)   Comcast also reserves the right to deliver "stringent corrective action up to and including removal," *see id.*, and similar language is also reflected on the work order forms field technicians complete during each job.  These work order forms are standardized forms provided by Comcast and which field technicians are required to complete at each job.  *See Exhibit D.*

(g)   Each work order supplied by Comcast contained a required arrival date and time, along with behavioral guidelines, a description of the work to be

3

performed, special instructions from Comcast, along with a disclaimer stating: "[f]ailure of the Vendor to arrive at designated job site on or before required arrival date & time, failure to be properly equipped with appropriate tools or written documentation expressly requested or reasonably expected by Comcast or behavior contrary to professional decorum may result in cancellation of this WO, the associated PO and subsequently any compensation for the Vendor." *Id*.

(h)   Comcast also provides field technicians with an "Install Guide," which provided detailed instructions on how to perform their primary job duties – wireless internet installation.

(i)   All of the field technician's work orders list "Comcast Business" as the customer.

(j)   Upon information and belief, Kirkham and Comcast determine the amount of compensation that field technicians are paid depending upon the services that they provide.

(k)   Upon information and belief, Kirkham and Comcast maintain the employment records of field technicians.

14.   Mr. Adamson was employed by Defendants as a field technician in Florida and Pennsylvania from approximately June 2018 to July 2019.

15.   Mr. White was employed by Defendants as a field technician in Florida from approximately February 2019 to August 2019.

16.   Defendants first classified field technicians as independent contractors, but in the later stages of Plaintiffs' employment they and other field technicians were reclassified as employees.

17.   As briefly summarized in paragraphs (a) – (e) below, the economic realities demonstrate that Plaintiffs and other field technicians were employees of Defendants, and not independent contractors:[1]

---

[1] The U.S. Department of Labor (DOL) is aware of the problem of misclassification of workers as independent contractors and has addressed the matter on its website.  Specifically, the DOL has stated "[m]isclassified employees often are denied access to critical benefits and protections they are entitled to by law, such as minimum wage, overtime compensation, family and medical leave,

(a)   Defendants closely monitored, directed, and controlled the day-to-day work of Plaintiffs and other field technicians.

(b)   By virtue of the fact that Plaintiffs worked on Comcast projects only, Defendants controlled their opportunity for profit or loss.  Plaintiffs and other field agents did not exercise managerial duties in performing their job duties.

(c)   The worked performed by Plaintiffs and other field technicians did not require specialized or advanced skills, nor did it require a specialized degree.

(d)   Plaintiffs and other field technicians typically worked full-time and exclusively as field technicians, performing cable and internet installations for Comcast's customers while wearing Comcast uniforms.

(e)   The services rendered by Plaintiffs and other field technicians are an integral part of Comcast and Kirkham's business because they are in the business of supplying consumers and businesses with cable and internet services.

18.   Field technicians regularly work over 40 hours per week.  For example, Mr. Adamson estimates that he worked an average of 70 hours per week during a typical week. Similarly, Mr. White estimates that he worked an average of 60 hours per week during a typical week.

19.   Plaintiffs and other field technicians are paid on a piece rate basis, meaning that they are paid a set rate that does not take into account the number of hours that they worked.  As a result, Plaintiff and other field technicians do not receive any overtime premium for hours worked over 40 per week.

**CLASS/COLLECTIVE ACTION ALLEGATIONS**

20.   Plaintiffs bring their FLSA claim as a collection action pursuant to 29 U.S.C. § 216(b) and bring their PMWA claim as a class action pursuant to Federal Rule of Civil Procedure 23.  The FLSA claim is brought on behalf of all field technicians employed by Defendants during

---

unemployment insurance, and safe workplaces.  Employee misclassification generates substantial losses to the federal governments and state governments in the form of lower tax revenues, as well as to state unemployment insurance and workers' compensation funds." *See*, https://www.dol.gov/agencies/whd/flsa/misclassification (last visited May 26, 2020).

any week within the past three years.  The PMWA claim is brought on behalf of all field technicians employed by Defendants in Pennsylvania during any week within the past three years.

21.     Plaintiffs' FLSA claim should proceed as a collective action because they and other putative collective members, having worked pursuant to the common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

22.     Class action treatment of the PMWA claim is appropriate because, as alleged, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

23.     The class, upon information and belief, includes over 100 individuals, all of whom are readily ascertainable based on Defendants' payroll records and are so numerous that joinder of all class members is impracticable.

24.     Mr. Adamson is a class member, his claim is typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

25.     Mr. Adamson and his lawyers will fairly and adequately represent the class members and their interests.

26.     Questions of law and fact are common to all class members, because, *inter alia,* this action concerns Defendants' common compensation policies, as described herein.  The legality of these policies will be determined through the application of generally applicable legal principles to common facts.

27.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and

efficient adjudication of this litigation.

## COUNT I
### (Alleging FLSA Violations)

28.     All previous paragraphs are incorporated as though fully set forth herein.

29.     Plaintiffs and other field technicians were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

30.     The FLSA requires that employees receive overtime premium compensation "not less than one and one-half times" their regular pay rate for hours worked over 40 per week.  *See* 29 U.S.C. § 207(a)(1).

31.     Defendants violated the FLSA by failing to pay Plaintiffs and other field technicians overtime premium compensation for all hours worked over 40 per week.

32.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions and, as such, willfully violated the FLSA.

## COUNT II
### (Alleging PMWA Violations)

33.     All previous paragraphs are incorporated as though fully set forth herein.

34.     Mr. Adamson and the class members were "employees" of Defendants under the PMWA.

35.     The PMWA requires that employees receive overtime premium compensation "not less than one and one-half times" the employee's regular pay rate for hours worked over 40 per week.  *See* 43 P.S. § 333.104(c).

36.     Defendants violated the PMWA by failing to pay Mr. Adamson and the class members overtime premium compensation for all hours worked over 40 per week.

## JURY DEMAND

Plaintiffs demand a jury trial as to all claims so triable.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs, on behalf of themselves and other members of the class/collective, seek the following relief:

a. An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claim (Count I);

b. An Order certifying this action as a class action with respect to the PMWA claim (Count II);

c. Unpaid overtime wages and prejudgment interest;

d. Liquidated damages to the fullest extent permitted under the FLSA;

e. Litigation costs, expenses, and attorneys' fees; and

f. Such other and further relief as the Court deems just and proper.


Dated: May 27, 2020

/s/ Mark J. Gottesfeld
Peter Winebrake, Esq.
R. Andrew Santillo, Esq.
Mark J. Gottesfeld, Esq.
WINEBRAKE & SANTILLO
715 Twining Road, Suite 211
Dresher, Pennsylvania 19025
Ph: (215) 884-2491
mgottesfeld@winebrakelaw.com

Kevin J. Stoops, Esq. (*PHV Forthcoming*)
Charles R. Ash IV, Esq. (*PHV Forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Ph: (248) 355-0300
kstoops@sommerspc.com
crash@sommerspc.com